# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KAREN RUNNYMEDE-PIPER,

        Plaintiff,

v.

DISTRICT OF COLUMBIA, *et al.*,

        Defendants.

Civil Action No. 12-00930 (CKK)

## MEMORANDUM OPINION
(July 3, 2013)

Karen Runnymede-Piper ("Plaintiff") originally filed this action in the Superior Court of the District of Columbia, alleging that the named defendants, governmental bodies and health care providers, wrongfully separated her from her child at birth. The action was subsequently removed by the defendants to this Court on June 4, 2012, pursuant to 29 U.S.C. § 1441, on the basis of federal question jurisdiction deriving from Plaintiff's claim under 42 U.S.C. § 1983. *See* Notice of Removal, ECF No. [1] at ¶ 3; *see also* Notices of Consent to Removal, ECF Nos. [3], [7]. After the case was removed, this Court dismissed Plaintiff's claims against several of the defendants, leaving only the District of Columbia (the "District"), the District of Columbia Child and Family Services Agency ("CFSA"), and the Metropolitan Police Department ("MPD") as defendants in this action (collectively "District Defendants"). *See* Mem. Op. & Order (Sept. 21, 2012), ECF No. [28].

Presently before the Court is the [29] District Defendants' Motion to Dismiss and the District's Motion for Summary Judgment as to Plaintiff's Non-Federal Claims. Upon

consideration of the parties' submissions,[1] the relevant authorities, and the record as a whole, the Court shall GRANT IN PART and DENY WITHOUT PREJUDICE IN PART the District Defendants' motion.   Specifically, the Court shall grant the motion insofar as it requests dismissal of Plaintiff's Section 1983 claim for failure to state a claim upon which relief shall be granted.   The motion is otherwise denied without prejudice.   Instead, the Court, in an exercise of its discretion, shall decline to exercise supplemental jurisdiction over Plaintiff's state law claims and shall remand this matter for further proceedings to the District of Columbia Superior Court.

## I. BACKGROUND

The following facts are taken from the Complaint and must be accepted as true for purposes of a motion to dismiss.  *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), *cert. denied*, 559 U.S. 1039 (2010).  On March 27, 2009, Plaintiff gave birth to a son while admitted as a patient at Washington Hospital Center.  Compl. ¶¶ 11-12.  Plaintiff and her newborn son were scheduled to be discharged from the hospital three days later, March 30, 2009.  *Id.* ¶ 13.  However, while Plaintiff was awaiting discharge, two MPD officers appeared and forcibly separated Plaintiff from her son, causing injury to Plaintiff's hand.  *Id.* ¶ 14.  An unidentified individual then took the child to the hospital nursery while the MPD officers physically blocked Plaintiff from following the child and subsequently posted themselves outside of Plaintiff's hospital room, preventing her from exiting the room to see her son.  *Id.* ¶¶ 14-15.

---

[1] While the Court considers the entire record of this case, its consideration of the instant motion has focused on the following documents:  Compl., ECF No. [1-1]; Mem. of P. & A. Supporting the Dist. Defs' Mot. to Dismiss Pl.'s Compl. and the Dist. of Columbia's Mot. for Summ. J. as to Pl.'s Non-Federal Claims ("Defs' Mem."), ECF No. [29-2]; Pl.'s Opp'n to the Dist. Defs' Mot. to Dismiss Pl's Compl., and the Dist. of Columbia's Mot. for Summ. J. as to Pl.'s Non-Federal Claims ("Pl.'s Opp'n"), ECF No. [31]; Dist. of Columbia Defs' Reply to Pl.'s Opp'n to Defs' Mot. to Dismiss ("Defs' Reply").  In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering its decision on the instant motion. *See* LCvR 7(f).

Several hours later, Plaintiff was informed by hospital staff that she had been reported to "child protective services," which had approved the forcible separation of Plaintiff from her child. *Id*. ¶¶16-17. Plaintiff was then forcibly escorted out of the hospital, without having been informed as to her son's whereabouts or the status of her custody over him. *Id.* ¶ 18-19. Plaintiff further alleges, upon information and belief, that on April 1, 2009, CFSA told hospital staff – specifically, the doctor whom allegedly reported her – to discharge Plaintiff's son to Plaintiff, but that the doctor defied CFSA's directive until April 2, 2009. *Id.* ¶ 21. On April 2, 2009, Plaintiff retrieved her son from the hospital. *Id*. ¶ 22.

Plaintiff alleges that as a result of the forced separation from her child, she has suffered and will continue to suffer severe emotional distress, including impediments to bonding with her son; time and expense for psychological and/or medical care; and a lessening of enjoyment of life. *Id*. ¶ 26. The Complaint asserts the following five causes of action against the District Defendants: (i) negligence/gross negligence, (ii) intentional infliction of emotional distress, (iii) negligent infliction of emotional distress, (iv) deprivation of rights under 42 U.S.C. § 1983, and (v) negligent training and supervision.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss on the grounds that the complaint "fail[s] to state a claim upon which relief can be granted." A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. (8)(a), "in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a

3

claim, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss, the court must view the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.,* 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States,* 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). While the court must construe the complaint in the plaintiff's favor, it "need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994). Moreover, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted)*; accord Taylor v. FDIC,* 132 F.3d 753, 762 (D.C. Cir. 1997).

# III. DISCUSSION

**A. The Court shall dismiss Plaintiff's Section 1983 claim for failure to state a claim upon which relief can be granted.**

In addition to bringing several common law tort claims, Plaintiff asserts that the District Defendants deprived her of her constitutional rights in violation of 42 U.S.C. § 1983.  *See* Compl. ¶¶ 41-44.   Section 1983 creates a private cause of action as a remedy against constitutional violations.  42 U.S.C. § 1983 (2006).  The act states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

*Id.*

It is well-established that a municipality cannot be held responsible for their agents' constitutional torts under a *respondeat superior* theory, because the doctrine of *respondeat superior* liability does not apply to Section 1983 claims.  *Warren v. Dist. of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004).  Rather, a municipality can be held liable under Section 1983 only if the municipality "is itself responsible for an unconstitutional deprivation of rights."  *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 420 (D.C. Cir. 1996) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978)).  Stated differently, "a municipality can be liable under § 1983 only where its policies are the moving force [behind] the constitutional violation."  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (citations and internal quotation marks omitted).  *See also Warren*, 353 F.3d at 38 ("[M]unicipalities are liable for their agents' constitutional torts only if the agents acted pursuant to municipal policy or custom.").

Accordingly, in order to state a claim against a municipality under Section 1983, a plaintiff "must allege not only a violation of [her] rights under the Constitution or federal law, but also that the municipality's custom or policy caused the violation." *Warren*, 353 F.3d at 38 (citations omitted). Furthermore, "[a] § 1983 complaint that alleges municipal liability" "must include some factual basis for the allegation of a municipal policy or custom." *Ford v. Donovan*, 891 F. Supp. 2d 60, 69 (D.D.C. 2012) (quoting *Atchinson*, 73 F.3d at 424) (internal quotation marks omitted).

Here, even assuming *arguendo* that Plaintiff has sufficiently alleged a predicate violation founded in a parent's constitutional right to the custody of her child, Plaintiff has failed entirely to allege the existence of a custom or policy maintained by the District Defendants which caused that violation. Count IV of the Complaint – the count asserting Plaintiff's Section 1983 claim – incorporates by reference the factual allegations section of the Complaint and additionally alleges only that "[e]ach Defendant's conduct causing the forced separation of Plaintiff from her child was perpetrated under color of child neglect and abuse law of the District of Columbia, and subjected Plaintiff, a U.S. citizen, to the deprivation of her rights, privileges, or immunities secured by the Constitution and laws"; that "[a]s such, each defendant has violated 42 U.S.C. sec. 1983; and that "[a]s a result Plaintiff has suffered and will continue to suffer the injuries outlined above." Compl. ¶¶ 42-44.

Nowhere in these three short paragraphs – nor anywhere else in her Complaint – does Plaintiff identify any policy or custom maintained by the District Defendants that led to her alleged wrongful separation from her child. *See generally* Compl. Plaintiff does not dispute that the allegations in the Complaint do not expressly identify a "policy," "practice," or "custom." *See* Pl.'s Opp'n at 13. Rather, Plaintiff relies on the Complaint's allegation that the wrongful

separation of Plaintiff from her child was carried out by MPD and CFSA agents "under color of child neglect and abuse law of the District of Columbia" to argue that the Complaint "clearly implicates the customs and policies of the CFSA and MPD." *See* Pl.'s Opp'n at 14 (citing provisions of the D.C. Code authorizing the CFSA and/or MPD to remove a child from custody based on reasonable belief that the child is in immediate danger). This argument need not detain the Court long, as it completely misconstrues the legal standards governing municipal liability. As the Supreme Court has made clear, "the touchstone of the § 1983 action against a government body is an allegation that official policy *is responsible* for a deprivation of rights protected by the Constitution." *Monell*, 436 U.S. at 690 (emphasis added). In other words:

> [I]t is not enough that a municipal official engaged in unconstitutional conduct while acting pursuant to a wholly legitimate, official policy of his employer. If that were the case, then municipalities would effectively be subject to *respondeat superior* liability for unconstitutional acts committed by their employees in their official capacities. That is precisely the rule that the *Monell* Court rejected when it adopted the "policy or custom" standard for municipal liability[.]

*Costello v. Dist. of Columbia*, 826 F. Supp. 2d 221, 226 (D.D.C. 2011). *See also, Davis v. Dist. of Columbia*, 800 F. Supp. 2d 28, 34-35 (D.D.C. 2011). In any event, based upon the representations made in her submissions, Plaintiff appears to actually be arguing that the responding officers acted in *violation* of the cited statutory scheme, not in accordance with it, indicating that the cited provisions were not in any way the "moving force" behind the alleged violations. *See, e.g.*, Compl. ¶ 28 (alleging that "[t]here were no reasonable grounds for the involuntary separation); Pl.'s Opp'n at 14.

In the alternative, Plaintiff argues that even absent express allegations that the District Defendants explicitly adopted a policy, custom, or practice that violated her constitutional rights, she has sufficiently alleged that the District Defendants failed to respond to a need in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in

constitutional violations.  *See* Pl.'s Opp'n at 13.  Specifically, Plaintiff argues that the "extreme" and "baseless" nature of the District Defendants' separation of Plaintiff from her child itself establishes that the District Defendants acted with deliberate indifference to her constitutional rights.  *Id.* at 14.  The Complaint also alleges – albeit vaguely and pursuant to an entirely separate count – that the District Defendants failed to adequately train and/or supervise their agents "to preserve the familial bond of Plaintiff and her child" and to "not forcibly separate Plaintiff from her child without a reasonable basis."  Compl. ¶¶ 45-50.  Finally, Plaintiff argues that because the Complaint alleges that the wrongful separation occurred through coordinated conduct among hospital staff, MPD, and CFSA, the clear implication of this coordinated action is that it was the result of a policy or practice of the District Defendants and deliberate indifference by the District Defendants.  Pl.'s Opp'n at 15.

The Court finds all of the foregoing arguments unavailing.  To be sure, it is well-established that "a [municipality's] inaction, including its failure to train or supervise its employees adequately, [can] constitute[ ] a policy or custom" within the meaning of Section 1983, but only "when it can be said that the failure amounts to deliberate indifference towards the constitutional rights of persons in its domain."  *Daskalea v. Dist. of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) (citation and quotation marks omitted).  "Deliberate indifference … is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, but did not act."  *Warren*, 353 F.3d at 39 (quoting *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)) (internal quotation marks omitted).  Notably, "[t]he deliberate indifference standard involves more than mere negligence, and it does *not* require the [municipality] to take reasonable care to discover and prevent constitutional violations.  It simply means that, faced with actual or constructive knowledge that its agents will

8

probably violate constitutional rights, the [municipality] may not adopt a policy of inaction."
*Davis*, 800 F. Supp. 2d at 33-34 (citations and internal editing omitted).  As the Supreme Court
has held:

> A municipality's culpability for a deprivation of rights is at its most tenuous where a
> claim turns on a failure to train. . . . 'Deliberate indifference' is a stringent standard of
> fault, requiring proof that a municipal actor disregarded a known or obvious consequence
> of his action.  Thus, when city policymakers are on actual or constructive notice that a
> particular omission in their training program causes city employees to violate citizens'
> constitutional rights, the city may be deemed deliberately indifferent if the policymakers
> choose to retain that program. . . . A pattern of similar constitutional violations by
> untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for
> purposes of failure to trail.  Policymakers' continued adherence to an approach that they
> know or should know has failed to prevent tortious conduct by employees may establish
> the conscious disregard for the consequences of their action – the 'deliberate
> indifference' – necessary to trigger municipal liability.  Without notice that a course of
> training is deficient in a particular respect, decisionmakers can hardly be said to have
> deliberately chosen a training program that will cause violations of constitutional rights.
>
> *Connick v. Thompson*, --- U.S. ---, 131 S. Ct. 1350, 1359-60, 179 L. Ed. 2d 417 (2011)
> (internal citations and quotation marks omitted).

Here, the Complaint does not even conclusorily allege that the District Defendants
exhibited "deliberate indifference."  *See generally* Compl.  Nor does it plead any factual content
from which the Court could draw a reasonable inference that the District Defendants knew or
should have known of the risk of a constitutional violation, but failed to act.  *See generally id.*
To survive a motion to dismiss under the standard set forth in *Twombly* and *Iqbal*, a complaint
alleging Section 1983 liability under a failure to train or supervise theory must contain *facts*
demonstrating the defendant municipality's actual or constructive notice of deficiencies in its
training, such as, for example, a pattern of similar constitutional violations of untrained
employees.  *Davis*, 800 F. Supp. 2d at 35-36; *Costello*, 826 F. Supp. 2d at 226.  Conclusory
allegations of deficient training and supervision are simply insufficient.  *Id.*  But that is exactly
what Plaintiff has provided here, having alleged nothing more than conclusory allegations of

negligent training and supervision, while including no facts – none – suggesting that the District Defendants knew or should have known of any deficiencies in the training or supervision of its agents and employees with respect to parent-child separation procedures.  *See generally* Compl. Accordingly, the Complaint fails to state a Section 1983 claim against the District Defendants based upon improper training and supervision.  *See, e.g., Davis*, 800 F. Supp. 2d at 35-36 (conclusory allegations of a failure by the District to train officers on the use of deadly force in barricade situations were insufficient to state a claim that the District was deliberately indifferent toward the constitutional rights of individuals); *Costello*, 826 F. Supp. 2d at 225-226 ("While the plaintiffs have alleged in conclusory terms that the District failed to train its officers regarding the lawful execution of search warrants, they have pleaded no *facts* indicating that the District's decisionmakers knew or should have known of any deficiencies in the training of its police officers concerning the execution of search warrants such that the District could be deemed 'deliberately indifferent' towards citizens' constitutional rights[.]") (emphasis in original and internal citation omitted); *Robertson v. Dist. of Columbia*, Civ. A. No. 09-1188, 2010 WL 3238996, at * 8 (D.D.C. Aug. 16, 2010) ("Although the plaintiff in this case alleges that the District acted with deliberate indifference in failing to train its officers, the complaint contains no facts suggesting that the District knew or should have known of any deficiencies in the training of its officers with respect to potentially suicidal detainees.").

Plaintiff's even broader arguments – that the extreme and coordinated nature of the events giving rise to her claims is itself enough to imply that the District Defendants were acting pursuant to a policy or custom or were  deliberately indifferent to Plaintiff's constitutional rights – are likewise unavailing.  As with her failure to train claim, the Complaint contains no facts whatsoever indicating that the District Defendants knew or should have known of any

deficiencies in their parent-child separation procedures, nor has she described who, exactly, was on notice of such deficiencies or how they acted (or failed to act) in connection therewith.  *See generally* Compl.  While Plaintiff alleges that the *doctor* at the hospital reported her to CFSA and subsequently "defied" CFSA's directive to return Plaintiffs' son to her until one day after such directive was given, *see* Compl. ¶ 21, this allegation hardly suffices to plead action or inaction on behalf of the *District Defendants* amounting to deliberate indifference.  "[M]erely speculating that an unidentified policy and uncorroborated practice or custom exists without providing any factual heft to support the allegation is insufficient to state a claim under § 1983." *Trimble v. Dist. of Columbia*, 779 F. Supp. 2d 54, 59 (D.D.C. 2011).  *See also, e.g.*, *Robertson*, 2010 WL 3238996, at * 8 (rejecting plaintiff's general claim that the District maintained a custom of failing to provide adequate care to potentially suicidal detainees because the complaint contained no facts indicating that the District knew or should have known of any deficiencies in the treatment or care provided to potentially suicidal detainees like the decedent).

In summary, because Plaintiff has failed to plead facts which show that a policy or custom of the District Defendants was a "moving force" behind the alleged violation of Plaintiff's constitutional rights, or that the District Defendants exhibited deliberate indifference in connection with the execution of District of Columbia child neglect and abuse law, Plaintiff's Section 1983 claim against the District Defendants requires dismissal.

**B. The Court shall remand Plaintiff's state law claims to District of Columbia Superior Court.**

In light of the dismissal of Plaintiff's Section 1983 claim, the Complaint contains no further federal causes of action over which this court has original subject matter jurisdiction.  *See generally* Compl.  Rather, the only claims that remain in this action are District of Columbia common law causes of action: negligence/gross negligence, intentional infliction of emotional

distress, negligent infliction of emotional distress, and negligent training and supervision. *See id.*
The Court must therefore consider whether to continue to exercise pendent jurisdiction over
these remaining claims pursuant to 28 U.S.C. § 1367(a), which provides, in pertinent part, that
"in any civil action of which the district courts have original jurisdiction, the district courts shall
have supplemental jurisdiction over all other claims that are so related to claims in the action
within such original jurisdiction that they form part of the same case or controversy[.]"   28
U.S.C. § 1367(a).  "Whether to retain jurisdiction over pendent … claims after the dismissal of
the federal claims is a matter left to the sound discretion of the district court[.]" *Ali Shafi v.
Palestinian Auth.*, 642 F.3d 1088, 1097 (D.C. Cir. 2011)). [2]

In determining whether to retain or dismiss supplemental state law claims, "the district
court is to be 'guided by consideration of the factors enumerated in 28 U.S.C. § 1367(c).'"
*Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 n. 4 (D.C. Cir. 2005) (citing *Edmondson &
Gallagher v. Alban Towers Tenants Assoc.*, 48 F.3d 1260, 1266 (D.C. Cir. 1995)).  Additionally,
district courts are to consider these statutory factors within the framework of "judicial economy,
convenience, fairness, and comity." *Edmondson & Gallagher*, 48 F.3d at 1266. "'[I]n the usual

[2] The Court pauses to observe that at no point in time has either party suggested that this Court's
jurisdiction over Plaintiff's state law claims is anything other than merely supplemental to the
Court's original jurisdiction over the now-dismissed Section 1983 claim.  *See* Notice of
Removal, ECF No. [1], ¶ 3 (removing case from Superior Court on the sole ground that the
Complaint states a federal cause of action under Section 1983 and expressly asserting that the
Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims).
Further, although diversity of citizenship would appear to presently exist between the remaining
parties to this suit given Plaintiff's residency in Maryland, *see* Compl. ¶ 2, diversity did not serve
as the grounds for removal.  Nor could it have, as the District Defendants are citizens of the
forum state. *See* 28 U.S.C. § 1441(b). *See, e.g., Zuurbier v. MedStar Health, Inc.*, 306 F. Supp.
2d 1, 7 (D.D.C. 2004); *see also Trask v. Kasenetz*, 818 F. Supp. 39, 44-45 (E.D.N.Y. 1993) ("No
provision of the Judiciary Act compels this court to retain jurisdiction over a case removed by
citizens of this state based upon a federal claim that has been dismissed, even where the parties
are citizens of different states.  The underlying logic of the statutory scheme suggests, to the
contrary, that the court should remand the case to the [state] court in which plaintiff first chose to
bring it.").

case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Shekoyan v. Sibley Int'l*, 409 F.3d at 424 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).

In this case, the balance of factors weighs in favor of declining to exercise jurisdiction over Plaintiff's state law claims.  The factors enumerated in Section 1367(c) weigh in favor of declining to exercise jurisdiction, as there are no federal claims remaining, and the only surviving claims touch on developing areas of District of Columbia common law.  *See* 28 U.S.C. § 1367(c)(1), (3) ("The district courts may decline to exercise supplemental jurisdiction over a claim … if … (1) the claim raises a novel or complex issue of State law, … [or] (3) the district court has dismissed all claims over which it has original jurisdiction.").  In addition to requiring application of District of Columbia tort law, the question of the sufficiency of the notice of claims letter and/or e-mail received by the District – which is relevant to the viability of all of Plaintiff's tort claims – would appear to require an especially nuanced application of District of Columbia case law interpreting the requirements of D.C. Code § 12-309.  *See*, *e.g.*, *Alraee v. Bd. of Trustees of Univ. of Dist. of Columbia*, 889 F. Supp. 2d 73, 77 (D.D.C. 2012) (dismissing sole federal claim and declining to exercise supplemental jurisdiction over breach of contract and tort claims because they raised novel or complex issues of District of Columbia law).

Furthermore, considerations of comity and judicial economy likewise counsel in favor of declining to exercise supplemental jurisdiction over Plaintiff's state law claims.  The Court has not yet invested significant time and resources on the state law claims, and the District of Columbia Superior Court would naturally have greater familiarity and interest in the issues that

remain insofar as they require interpretation of the District's own statutory and common law.

Accordingly, this case shall be remanded.  *See D.C. Prof'l Taxicab Drivers Ass'n v. Dist. of Columbia*, 880 F. Supp. 2d 67, 77 (D.D.C. 2012) ("When a case removed from state court no longer contains any basis for federal court jurisdiction, remanding the case to state court is the proper course of action.") (citations omitted).

## IV. CONCLUSION

For the reasons stated herein, the Court shall GRANT IN PART and DENY WITHOUT PREJUDICE IN PART the District Defendants' motion to dismiss.  Specifically, the Court shall grant the motion insofar as it requests dismissal of Plaintiff's Section 1983 claim for failure to state a claim upon which relief shall be granted.  The motion is otherwise denied without prejudice, as the Court, in an exercise of its discretion, declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  Instead, this action is hereby remanded for further proceedings to the District of Columbia Superior Court.

An appropriate Order accompanies this Memorandum Opinion.


\_\_\_\_\_/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge